## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF WEST VIRGINIA
## CHARLESTON DIVISION

ROBIN JEAN DAVIS,

     *Plaintiff*,

     v.

JIM JUSTICE, Governor; ROGER HANSHAW,
Speaker of the West Virginia House of Delegates;
JOHN OVERINGTON, Speaker Pro Tempore of the
West Virginia House of Delegates; DARYL
COWLES, Majority Leader of the West Virginia
House of Delegates; CHANDA ADKINS, GEORGE
AMBLER, WILLIAM ANDERSON, MARTIN
ATKINSON III, SAIRA BLAIR, BRENT BOGGS,
JIM BUTLER, MOORE CAPITO, ROY COOPER,
VERNON CRISS, MARK DEAN, FRANK DEEM,
JOE ELLINGTON, PAUL ESPINOSA, ALLEN V.
EVANS, ED EVANS, TOM FAST, MICHAEL
FOLK, GEOFF FOSTER, CINDY FRICH, MARTY
GEARHEART, DIANNA GRAVES, BILL
HAMILTON, DANNY HAMRICK, JASON
HARSHBARGER, KENNETH HICKS, JOSHUA
HIGGINBOTHAM, JORDAN HILL, RAY HOLLEN,
ERIC L. HOUSEHOLDER, GARY G. HOWELL, D.
ROLLAND JENNINGS, JOHN R. KELLY, KAYLA
KESSINGER, CHARLOTTE LANE, DANIEL
LINVILLE, SHARON LEWIS MALCOLM, JUSTIN
MARCUM, PATRICK MARTIN, ZACK
MAYNARD, PAT MCGEEHAN, CAROL MILLER,
RILEY MOORE, ERIC NELSON, JEFFREY PACK,
TONY PAYNTER, RODNEY A. PYLES, BEN
QUEEN, RALPH RODIGHIERO, MATTHEW
ROHRBACH, WILLIAM R. ROMINE, RUTH
ROWAN, JOHN SHOTT, KELLI SOBONYA, JOE
STATLER, AMY SUMMERS, TERRI SYPOLT,
JILL UPSON, DANNY WAGNER, GUY WARD,
STEVE WESTFALL, BRAD WHITE, S.
MARSHALL WILSON, MARK ZATEZALO,
members of the West Virginia House of Delegates;
STEVE HARRISON, Clerk of the West Virginia
House of Delegates; RYAN FERNS, Majority Leader

Case No. 2:18-cv-01316

Hon. Thomas E. Johnston

**REPLY IN SUPPORT OF
PLAINTIFF DAVIS'S MOTION
FOR A PRELIMINARY
INJUNCTION**

of the West Virginia Senate; MIKE AZINGER,
ROBERT D. BEACH, CRAIG BLAIR, GREG
BOSO, CHARLES H. CLEMENTS, SUE CLINE,
ROBERT L. KARNES, KENNY MANN, MIKE
MARONEY, MARK R. MAYNARD, RICHARD
OJEDA, PATRICIA RUCKER, RANDY SMITH,
DAVE SYPOLT, TOM TAKUBO, JOHN R. UNGER
II, RYAN WELD, MIKE WOELFEL, members of the
West Virginia Senate; LEE CASSIS, Clerk of the
West Virginia Senate,

    *Defendants*.

## TABLE OF CONTENTS

INTRODUCTION..................................................................................................................1

ARGUMENT.........................................................................................................................2

     **I.**     **Justice Davis Has Shown She Will Succeed on the Merits.**................................2

          **A.**     **It Is Beyond Dispute That the Impeachment Proceedings Against Justice Davis Are Unconstitutional.** ...........................................2

          **B.**     **Legislative Immunity Cannot Attach to Illegitimate Actions and the Clerks of the House and Senate are not Entitled Legislative Immunity.** ........................................................................................6

          **C.**     **Justice Davis's Claims Do Not Present a Non-Justiciable Political Question.** ......................................................................11

          **D.**     **Abstention Does not Apply to Cases of Bad Faith, Harassment, or any other Unusual Circumstance that would call for Equitable Relief.** ....................................................................13

     **II.**     **Justice Davis Will Suffer Irreparable Harm If the Injunction Is Not Granted.** ...............................................................................................16

     **III.**     **The Balance of the Hardships and the Public Interest Favor the Injunction.** .......................................................................................19

     **CONCLUSION** ....................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acierno v. Cloutier,*
40 F.3d 597 (3rd Cir. 1994) ...............................................................................9

*Baker v. Carr,*
369 U.S. 186 (1962).......................................................................................11, 12

*Bastien v. Office of Senator Ben Nighthorse Campbell,*
390 F.3d 1301 (10th Cir. 2004) ........................................................................7

*Bogan v. Scott-Harris,*
523 U.S. 44 (1998).............................................................................................7

*Centro Tepeyac v. Montgomery Cty.,*
722 F.3d 184 (4th Cir. 2013) (en banc) ..........................................................20

*Doe v. McMillan,*
412 U.S. 306 (1973)..........................................................................................11

*Dombrowski v. Eastland,*
387 U.S. 82 (1967)..............................................................................................7

*Eastland v. United States Servicemen's Fund,*
421 U.S. 491 (1975)............................................................................................8

*England v. La. State Bd. of Med. Examiners,*
375 U.S. 411 (1964)..........................................................................................14

*Eslinger v. Thomas,*
476 F.2d 225 (4th Cir. 1973) ...........................................................................11

*Faulkner v. Jones,*
10 F.3d 226 (4th Cir. 1993) .............................................................................17

*Gerstein v. Pugh,*
420 U.S. 103 (1975)..........................................................................................16

*Gibson v. Berryhill,*
411 U.S. 564 (1973)..........................................................................................16

*Gravel v. United States,*
408 U.S. 606 (1972)............................................................................................7

*Handsome Brook Farm, LLC v. Humane Farm Animal Care, Inc.*,
    700 F. App'x 251 (4th Cir. 2017) ........................................................................18

*Henry v. Greenville Airport Comm'n*,
    284 F.2d 631 (4th Cir. 1960) ..............................................................................17

*Hutchinson v. Proxmire*,
    443 U.S. 111 (1979).............................................................................................7

*Kilbourn v. Thompson*,
    103 U.S. 168 (1880)...........................................................................................10

*Kugler v. Helfant*,
    421 U.S. 117 (1975)....................................................................................15, 16

*Larsen v. Senate of Com. of Pa.*,
    152 F.3d 240 (3d Cir. 1998).....................................................................13, 14, 15

*Marietta Mem. Hosp. v. W. Va. Health Care Auth.*,
    2016 WL 7363052 (S.D.W. Va. Dec. 19, 2016) ....................................................19

*Nixon v. United States*,
    506 U.S. 224 (1993)...........................................................................................12

*Pashby v. Delia*,
    709 F.3d 307 (4th Cir. 2013) ..............................................................................17

*Powell v. McCormack*,
    395 U.S. 486 (1969)....................................................................................10, 11, 12

*Ryan v. Burlington Cty., N.J.*,
    889 F.2d 1286 (3d Cir. 1989)................................................................................9

*Spring Comms., Inc. v. Jacobs*,
    571 U.S. 69 (2013)..............................................................................................14

*Supreme Court of Virginia v. Consumers Union of U.S., Inc.*,
    446 U.S. 719 (1980)............................................................................................11

*Tenney v. Brandhove*,
    341 U.S. 367 (1951)..............................................................................................6

*Twin City Fire Ins. Co. v. Ben Arnold-Sunbelt Beverage Co. of S.C.*,
    433 F.3d 365 (4th Cir. 2005) ................................................................................5

*United States v. Brewster*,
    408 US 501 (1972)............................................................................................7, 8

*Willcox v. Consol. Gas Co. of N.Y.*,
    212 U.S. 19 (1909)........................................................................................14

*State of W. Va. ex rel. Workman v. Carmichael*,
    No. 18-0816, 2018 WL 4941057 (W. Va. Oct. 11, 2018) ............................... *passim*

*Younger v. Harris*,
    401 U.S. 37 (1971)..........................................................................14, 15, 16

*Zimmeck v. Marshall Univ. Bd. of Governors*,
    2013 WL 5700591 (S.D.W. Va. Oct. 18, 2013) ....................................................10

## Other Authorities

Lacie Pierson, *WV Senate Rejects Deal, Motions to Dismiss Articles of
    Impeachment*, CHARLESTON GAZETTE-MAIL (Sep. 11, 2018) ................................19

Meagan Flynn, *West Virginia Botches Impeachment of Chief Justice. Faces
    Constitutional Crisis. Stay Tuned,* WASH. POST (Oct. 15, 2018)...........................20

Steve Allen Adams, *Workman to Stand Trial on Impeachment Monday Despite
    Constitutional Issues*, THE PARKERSBURG NEWS & SENTINEL (Oct. 15, 2018).....................20

W. VA. CONST. art. III, § 10 ............................................................................4

W. VA. CONST. art IV, § 9..........................................................................10, 12

W. VA. CONST. art. V, § 1 ............................................................................9

W. VA. CONST. art. VIII, § 3 ..........................................................................9

W. VA. CONST. art. VIII, § 8 ..........................................................................9

## INTRODUCTION

With these impeachment proceedings, the Defendants have attempted to sweep all popularly elected Justices from the West Virginia Supreme Court of Appeals, thus depriving the citizens of West Virginia of their constitutionally guaranteed right to elect the judicial officers serving on the State's highest court. The Supreme Court of Appeals has now conclusively held that these actions are unconstitutional. Deciding a petition filed by Justice Margaret L. Workman, that Court has entered a writ of prohibition ordering that the impeachment proceedings as to Justice Workman be stopped immediately. *See State of W. Va. ex rel. Workman v. Carmichael*, No. 18-0816, 2018 WL 4941057 (W. Va. Oct. 11, 2018). The Court determined that the impeachment proceedings violate fundamental requirements of separation of powers and due process set forth in the West Virginia Constitution. In doing so, the Court explicitly invalidated two Articles of Impeachment directed to both Justice Workman and Justice Davis as contrary to separation of powers principles, and determined that *all* of the Articles of Impeachment were improperly entered in violation of due process.

Although not a party to Justice Workman's petition, Justice Davis has filed a motion requesting that the Supreme Court of Appeals expand its writ of prohibition to bar impeachment proceedings against her as well. The Court has granted respondents—nearly all of whom are defendants here—until October 22 to respond to Justice Davis's request. Citing Justice Davis's motion in the Supreme Court of Appeals, Acting Chief Justice and Presiding Officer of the Court of Impeachment Paul T. Farrell has generally continued the trial of Justice Davis in the Senate.

With no trial imminent, Justice Davis does not presently require preliminary injunctive relief from this Court to avoid the irreparable harm that would result from allowing any trial to proceed. Moreover, if the Supreme Court of Appeals expands the writ of prohibition to Justice Davis's impeachment proceedings, then Justice Davis will withdraw her request for preliminary

1

injunctive relief. Accordingly, the Court has held her motion for preliminary injunction in abeyance until such time as the Supreme Court of Appeals resolves her motion to expand the *Workman* writ. If, however, the current situation should change, then Justice Davis may ask this Court to adjudicate her preliminary injunction motion. To that end, Justice Davis replies herein to the arguments in Defendants' Opposition.

Defendants' Opposition barely addresses the *Workman* decision or the reasoning advanced by the Supreme Court of Appeals. Nor do Defendants remotely challenge the showing in Justice Davis's opening motion that the Articles of Impeachment against her were factually baseless and legally invalid. Those showings thus stand unrefuted.

Defendants instead contend that this Court cannot reach any of Justice Davis's claims as a result of legislative immunity, the political question doctrine, or abstention principles. As even Defendants recognize, however, "the judiciary may step in" in order to deliver "emergency corrective intervention" when necessary "to ensure the Legislature's fidelity to the text of the constitution." Legislative Defs.' Resp. in Opposition, Dkt. 127 ("Opp.") at 13. That is precisely what Justice Davis seeks here. None of Defendants' arguments can overcome Justice Davis's right to pursue relief for violations of her constitutional rights. Justice Davis is likely to succeed on the merits, and has amply established that she will be irreparably harmed without relief.

## ARGUMENT

### I.  Justice Davis Has Shown She Will Succeed on the Merits.

#### A.  It Is Beyond Dispute That the Impeachment Proceedings Against Justice Davis Are Unconstitutional.

It has now been conclusively determined that these impeachment proceedings—which Defendants have made no effort to defend—are constitutionally infirm. In its *Workman* decision,

the Supreme Court of Appeals entered a writ of prohibition barring all impeachment proceedings against Justice Workman, and that decision is determinative here.

**First,** the Supreme Court of Appeals held that the impeachment proceedings violate the West Virginia Constitution's explicit requirement of separation of powers. The court invalidated Article IV, which purported to impeach Justices Workman and Davis for authorizing excessive compensation to Senior Status Judges. As the Court explained, the legislature's attempt to restrict the appointment of Senior Status Judges constituted improper encroachment on the judiciary's exclusive authority to regulate judicial appointment matters, and was thus "unconstitutional and unenforceable," and no impeachment could lawfully be pursued on that basis.[1] *Workman* Op. at 52-53. The Court likewise invalidated the Articles insofar as they purported to impeach Justices for violations of the Code of Judicial Conduct. Because the Supreme Court of Appeals "has the exclusive authority to determine whether [a Justice] violated" any of the Canons, the "West Virginia Constitution prohibits the Court of Impeachment from prosecuting a judicial officer for an alleged violation of the Code of Judicial Conduct." *Id.* at 58. Significantly, Counts IV, V, and XIV advanced against Justice Davis assert violations of Canons I and II of the Code of Judicial Conduct.

**Second,** the Supreme Court of Appeals held that the impeachment proceedings violate due process requirements. The court first held that Justice Workman "has both a liberty and property interest in having the impeachment rules followed. The Petitioner has a liberty interest in not having her reputation destroyed in the legal community and public at-large by being impeached and removed from office; and she has a property interest in obtaining her pension

---

[1] Article V, which also dealt with supposed improper overpayments to senior status judges, was not before the Court in *Workman*, but the Court's reasoning applies with equal force to both Articles IV and V, which cite the same violations.

when she chooses to retire." *Workman* Op. at 61. Although Justice Davis has already retired and thus cannot be removed, she faces precisely the same reputational risks, as well as the infringement of her property interest in her pension.

And the Court went on to hold that these interests were not adequately protected in the impeachment proceedings. The Court focused in particular on the House of Delegates' violations of the procedural rules it had adopted through legislation at the outset of the impeachment investigation. *See id.* at 62-63. These were the same errors that Justice Davis pointed to in her complaint—namely, that the Judiciary Committee failed to make findings of fact in support of the Articles of Impeachment, and the House of Delegates failed to adopt an adequate resolution in favor of impeachment. *See id.*; *see also* Compl. ¶¶ 38-42, 71-74. The Supreme Court of Appeals explained that these errors were a matter of "grave[] concern[]," sufficient to establish a violation of the Due Process Clause of the West Virginia Constitution: "Basic due process principles demand that governmental bodies follow the rules they enact for the purpose of imposing sanctions against public officials. This right to due process is heightened when the Legislature attempts to impeach a public official." *Workman* Op. at 63. The Court thus held "in the strongest of terms, that the Due Process Clause of Article III, § 10 of the Constitution of West Virginia requires the House of Delegates follow the procedures that it creates to impeach a public officer," and that "[f]ailure to follow such rules will invalidate all Articles of Impeachment that it returns against a public officer." *Id.* at 64. All four of the Articles of Impeachment returned against Justice Davis suffered from these constitutional flaws.

In addition, the court held that Article XIV, which was asserted against all of the Justices, does "not pass constitutional muster on due process grounds, because it is vague and ambiguous." *Id.* at 59 n.2 (citing *State v. Bull*, 512 S.E.2d 177, 183 (W. Va. 1998), which

discusses both federal and State constitutional due process requirements). "As drafted, the Article failed to specify which Justice committed any of the myriad of conduct allegations," violating the individual Justices' "constitutional right to be 'adequately informed of the nature of the charge[.]'" *Id.* (quoting *State v. Hall*, 304 S.E.2d 43, 48 (W. Va. 1983)). Justice Davis's complaint asserts this same defect in Article XIV. Compl. ¶¶ 55-57.

These rulings establish the merit of the claims that Justice Davis advances in this Court. The Supreme Court of Appeals' decision is determinative of Counts V and VI of Justice Davis's complaint, which assert violations of the provisions of the West Virginia Constitution mandating separation of powers and judicial independence. On questions of West Virginia law, this Court is bound by the decisions of the Supreme Court of Appeals. *E.g.*, *Twin City Fire Ins. Co. v. Ben Arnold-Sunbelt Beverage Co. of S.C.*, 433 F.3d 365, 369 (4th Cir. 2005). And that Court has held that these same impeachment proceedings violate the West Virginia Constitution's requirements of separation of powers and judicial independence. Justice Davis will thus unquestionably establish the merits of her claims under the West Virginia Constitution.

Although this Court in its resolution of Justice Davis's claims under the federal Due Process Clause is not bound by the Supreme Court of Appeals' analysis of due process requirements, that Court's reasoning is highly persuasive. As the Court explained, the impeachment proceedings violate fundamental notice requirements because the Articles of Impeachment were entered without following the House's own published procedural requirements, without legally required findings of fact, and without detailing what conduct the individual Justices were charged with engaging in. Moreover, the due process violations with respect to Justice Davis are even more grave than what the Supreme Court of Appeals addressed because Justice Davis has retired from the Court—and yet the Senate has persisted with

proceedings against her to threaten disqualification of her from holding future public office and removal of her pension. But the plain text of the House and Senate rules, as well as the West Virginia Constitution, confirm that loss of pension and disqualification are not permissible judgments here. *See* Mem. in Support of Preliminary Injunction, Dkt. 13 ("Mem.") at 13-15, 18.

In short, the Supreme Court of Appeals' decision in *Workman* alone establishes the merits of Justice Davis's federal due process claims as well as her claims under the West Virginia Constitution. In addition, Justice Davis established in her opening motion that she is likely to prevail on her claims under the First Amendment and the Equal Protection Clause. Mem. at 21-22. Defendants have made no attempt to rebut any of these showings.

> **B.    Legislative Immunity Cannot Attach to Illegitimate Actions and the Clerks of the House and Senate are not Entitled Legislative Immunity.**

They instead seek to immunize their actions. Legislators are entitled to immunity when their actions fall within the sphere of "legitimate legislative activity." *Tenney v. Brandhove*, 341 U.S. 367, 376 (1951). If, however, their actions are illegitimate—illegal or unconstitutional—no immunity attaches. To the contrary, in Defendants' words, "the judiciary may step in to ensure that the Legislature is not exercising its exclusive power in direct contravention to the textual commands of the constitution." Opp. at 13. That is why the Supreme Court of Appeals in *Workman* acknowledged the general principle that "courts have no authority … to interfere with the proceedings of either house of the Legislature"—but held that principle "not applicable to the issue under consideration in the instant matter." *Workman* Op. at 17.

The Supreme Court has expressly extended immunity to "*legitimate* legislative activity." *Tenney*, 341 U.S. at 376 (emphasis added). But not everything legislators do is legislative or legitimate. Courts would be "closing [their] eyes to the realities of the American political system" if they equated the many "non-legislative activities" to the legislative process for

immunity purposes. *Brewster*, 408 U.S. at 524. The Court has therefore elevated substance over form when determining whether a particular act is legislative and legitimate, and consequently entitled to immunity. Thus, it is not the name of the proceedings to which immunity applies; instead, it is the "nature of the act" that must qualify as both legislative and legitimate. *Bogan v. Scott-Harris*, 523 U.S. 44, 54 (1998); *see Brewster*, 408 U.S. at 521 (declining a broad interpretation of legislative immunity because the Speech and Debate Clause, which traces its origin and rationale from common-law immunity that applies to state legislatures, "is exact and leaves no room for a construction which would extend the privilege beyond the terms of the grant" (citing *Long v. Ansell*, 293 U.S. 76, 82 (1934)).

The U.S. Supreme Court has refused to extend immunity to a host of illegitimate acts despite how facially legislative they may appear. "We would not think it sound or wise … to extend the privilege beyond its intended scope, its literal language, and its history, to include all things in any way related to the legislative process." *Brewster*, 408 U.S. at 516. *Brewster* accordingly declined to extend legislative immunity for Senator Brewster for illegitimate conduct, even though the illegitimate act (a bribe) had some nexus to legislative proceedings. *Id.* at 526–28. *Dombrowski v. Eastland* too declined fully to extend legislative immunity for committee counsel who may have engaged in illegitimate conduct (conspiracy) while working in a senate subcommittee. 387 U.S. 82, 85 (1967). And *Gravel v. United States* rejected legislative immunity for Senator Gravel who helped publish the Pentagon Papers, even though he had discussed them in a legislative meeting. 408 U.S. 606, 622 (1972); *see also Hutchinson v. Proxmire,* 443 U.S. 111 (1979) (denying immunity for speech that, while entered into the Congressional Record, was also entered into in public newspapers in a case involving libel); *Bastien v. Office of Senator Ben Nighthorse Campbell*, 390 F.3d 1301 (10th Cir. 2004) (no

legislative immunity for employment-discrimination claim). These cases all show that illegitimate conduct—despite having some nexus to legislative activity—is not entitled to immunity, because legislators are not "super-citizens" beyond accountability. *Brewster*, 408 U.S. at 516. Such illegal or unconstitutional conduct is beyond the scope of legislative immunity, prior cases hold, because both undermine its purposes: to protect the "integrity of the legislative process" and "separation of powers." *Eastland v. United States Servicemen's Fund*, 421 U.S. 491, 502 (1975).

The conduct of Defendants here likewise undermines these purposes. Far from engaging in speech or debate regarding matters of public policy, Defendants are acting to deprive Justice Davis of her pension and future prospects for public service through proceedings that are both substantively and procedurally flawed. Indeed, the State's highest court recently held these impeachment proceedings unconstitutional precisely because they do not protect the "integrity of the legislative process" or "separation of powers"—but instead subvert the legislative process in violation of "[b]asic due process principles" and the "the separation of powers doctrine." *Workman* Op. at 63-64. The impeachment proceedings are "in direct contravention to the textual commands of the constitution" and governing law, Opp. at 13—and thus satisfy even Defendants' test for exclusion from legislative immunity.

***Substantively Illegitimate***. By pursuing impeachment proceedings against the entire Supreme Court of Appeals without any basis in law or fact to do so, the House and Senate have not exercised their constitutionally prescribed duties as a legislature. These proceedings, designed to eliminate the entire state Court for political and discriminatory reasons, are not legitimate legislative acts, but rather an unlawful incursion into the authority exclusively granted to the judiciary under the express text of the West Virginia Constitution.

The *Workman* opinion invalidated Article IV (and its reasoning applies equally to Article V) because the legislature's attempt to restrict the appointment of Senior Status Judges constituted improper encroachment on the judiciary's exclusive authority. In particular, the Court explained, the legislature's attempt to enforce a statutory limitation on payment to senior-status judges through impeachment "violates the Separation of Powers Clause of Article V, § 1 of the West Virginia Constitution, insofar as that statute seeks to regulate judicial appointment matters that are regulated exclusively by this Court pursuant to Article VIII, § 3 and § 8 of the West Virginia Constitution." *Workman* Op. at 52. The court likewise invalidated the Articles insofar as they purported to impeach Justices for violations of the Code of Judicial Conduct, because this too directly contravenes the constitutional text which is "express" in granting the Supreme Court of Appeals "exclusive authority to determine whether a justice … violated the Code of Judicial Conduct." *Id.* at 56. There can be no immunity for these illegitimate acts, which are in direct contravention to the text of the West Virginia Constitution.

***Procedurally Illegitimate***. In addition to being substantively legitimate, "the act must be 'procedurally' legislative, that is, passed by means of established legislative procedures." *Ryan v. Burlington Cty., N.J.*, 889 F.2d 1286, 1291 (3d Cir. 1989); *Acierno v. Cloutier*, 40 F.3d 597, 614 (3rd Cir. 1994) (same). This principle "requires that constitutionally accepted procedures of enacting the legislation must be followed in order to assure that the act is a legitimate, reasoned decision representing the will of the people which the governing body has been chosen to serve." *Ryan*, 889 F.2d at 1291 (citing *I.N.S. v. Chadha*, 462 U.S. 919 (1983) (holding one-house legislative veto unconstitutional)). The Defendants acted illegitimately when they violated their own procedures for impeachment proceedings. *See supra* I.A at 3-5. Basic due process principles demand that governmental bodies follow the rules they enact before stripping away protected

9

liberty and property interests. What is more, by threatening that Justice Davis's pension could be removed at the culmination of a trial in the Senate, Defendants have directly contravened the text of Article IV, § 9 of the West Virginia Constitution, which states expressly that "[j]udgment in cases of impeachment shall not extend further" than removal and disqualification—and does not authorize impeachment for the purpose of depriving a public servant of her pension.

As the Supreme Court of Appeals held "in the strongest of terms," these impeachment proceedings violate due process. *Workman* Op. at 63-64. Moreover, they directly contravene the text of the West Virginia Constitution. *See* Opp. at 11. Immunity therefore does not attach.

***Clerks Have No Immunity***. In any event, the Clerks of the House and Senate are not entitled to legislative immunity. Tellingly, the Defendants do not dispute Justice Davis's argument that "the Clerks of the House and Senate are not entitled to assert sovereign or legislative immunity for their role in initiating and administering these unconstitutional impeachment proceedings." Mem. at 22–23. Nor can they. "[L]egislative employees who participated in the unconstitutional activity are responsible for their acts." *Powell*, 395 U.S. at 504; *see also Zimmeck v. Marshall Univ. Bd. of Governors*, 2013 WL 5700591, at *7 (S.D.W. Va. Oct. 18, 2013) ("[T]he Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law." (citation omitted)). That the clerks may be acting under express orders from legislators does not bar judicial review of the constitutionality of the underlying act. The Supreme Court has decisively settled this question.

In *Kilbourn v. Thompson*, for example, the Court held that the Speech or Debate Clause could not be construed to immunize an illegal arrest by the sergeant at arms even though that illegal act was directed by an immune legislature. 103 U.S. 168, 200 (1880). In *Powell*, the Court asserted its judicial power to determine the validly of legislative actions impinging on individual

rights—there the illegal exclusion of a representative-elect—and to afford relief against House aides seeking to implement the invalid resolutions. 395 U.S. at 506. And within this circuit, the court in *Eslinger v. Thomas* granted an injunction against the clerk of the South Carolina Senate when the state senate denied a female law student employment as a page solely on the ground of gender. 476 F.2d 225, 230–32 (4th Cir. 1973), overruled on other grounds in *Supreme Court of Virginia v. Consumers Union of U.S., Inc.*, 446 U.S. 719 (1980); *see also Doe v. McMillan*, 412 U.S. 306, 315–16 (1973) (denying legislative immunity to "those who publish and distribute otherwise actionable materials beyond the reasonable requirements of the legislative function"). The Clerks may therefore be enjoined from administering these illegitimate and unconstitutional impeachment proceedings.

### C.   Justice Davis's Claims Do Not Present a Non-Justiciable Political Question.

Defendants next ask the Court to look away on the ground that "nearly all questions concerning impeachment proceedings are nonjusticiable." Opp. at 11. But Justice Davis's constitutional challenges to these impeachment proceedings are not barred by the political question doctrine. It is the province and duty of the judiciary to interpret the Constitution and to protect the constitutional rights of United States citizens, even—especially—when those rights are threatened by the actions of the political branches. *See Powell*, 395 U.S. at 549 ("Our system of government requires that federal courts on occasion interpret the Constitution in a manner at variance with the construction given the document by another branch. The alleged conflict that such an adjudication may cause cannot justify the courts' avoiding their constitutional responsibility."); *Baker v. Carr*, 369 U.S. 186, 217 (1962) ("The courts cannot reject as 'no law suit' a bona fide controversy as to whether some action denominated 'political' exceeds constitutional authority.").

The political question doctrine counsels only that courts abstain from reviewing controversies that are explicitly committed to the legislature or executive by the text of the United States Constitution. *See Baker*, 369 U.S. at 211 (describing a political question as one that has "been committed by the Constitution to another branch of government"). It does not bar courts from resolving controversies concerning the constitutionality of actions taken by the political branches, and in fact courts are responsible as "ultimate interpreter[s] of the Constitution" for determining "whether the action of that branch exceeds whatever authority has been committed" to it. *Id.*; *see also Powell*, 395 U.S. at 549.

In light of these foundational principles, it is clear that the Legislative Defendants have grossly overstated the holding of *Nixon v. United States*. The Supreme Court did not hold in that case, or any other, that "nearly all claims related to impeachment proceedings are nonjusticiable." Opp. at 17. To the contrary, the *Nixon* Court held only that "[t]he narrowly crafted text of the impeachment provision found in the Constitution of the United States prevented the Supreme Court from finding a basis for allowing a constitutional challenge to the impeachment procedure adopted by the Senate." *Workman* Op. at 21; *see Nixon*, 506 U.S. 224, 238 (1993). That holding, however, has no bearing on this case. For one, this case concerns not the federal impeachment provision, but the impeachment provision of the West Virginia Constitution, and—contrary to Defendants—the two provisions are not "virtually identical." Opp. at 18. Instead, the West Virginia Constitution mandates that impeachment proceedings must be "according to law and evidence," W. VA. CONST. art. IV, § 9, while the federal provision contains no such limitation. "Therefore, [the West Virginia Constitution] provides greater impeachment protections than the Constitution of the United States." *Workman* Op. at 21-22.

For another, unlike Nixon's claims, Justice Davis's claims do not arise under the Impeachment Trial Clause, but rather under the Due Process, Equal Protection, and Free Speech Clauses. Thus, Justice Davis does not ask this Court to make "policy choices and value determinations," Opp. at 16, but rather to examine whether the proceedings against her comply with the same constitutional requirements that courts implement every day. For these reasons, as the Supreme Court of Appeals held, "[t]he decision in *Nixon* is not controlling and is distinguishable." *Workman* Op. at 21.

Federal authority is consistent with the Supreme Court of Appeals' analysis in *Workman*. In *Larsen v. Senate of Com. of Pa.*, 152 F.3d 240, 246-47 (3d Cir. 1998), the Third Circuit confirmed that federal constitutional challenges to State impeachment proceedings—just like Justice Davis advances—are justiciable:

> Larsen's challenge to his impeachment is based primarily on the Due Process Clause of the Fourteenth Amendment and the Freedom of Speech Clause of the First Amendment. Both areas of the law are firmly within the domain of the federal judiciary and both are the subject of judicially developed legal principles that guide our decisions. Unlike the political question cases, where the "court[s] acknowledge[] the possibility that a constitutional provision may not be judicially enforceable," issues involving the First and Fourteenth Amendments are regularly enforced by judicial decision.

The Constitution plainly does not commit the resolution of Justice Davis's First and Fourteenth Amendment claims to the very legislature that is infringing her rights in the first place.[2]

### D.   Abstention Does not Apply to Cases of Bad Faith, Harassment, or any other Unusual Circumstance that would call for Equitable Relief.

Finally, Defendants ask the Court to abstain from hearing Justice Davis's claims because "exercise of jurisdiction will result in unwarranted interference with complicated (and often

---

[2] The Defendants' arguments concerning redressability and the fashioning of appropriate remedies are also inapplicable here.  Justice Davis has retired.  She does not seek reinstatement. She requests only that the Court order the Defendants to cease any further impeachment proceedings (including trial in the Senate) and to "correct the record" by striking the fabricated impeachment charges against her in the House.

unsettled) questions of State law." Opp. at 23. As a "general rule," when a federal court "is properly appealed to in a case over which it has by law jurisdiction, it is its duty to take such jurisdiction." *Willcox v. Consol. Gas Co. of N.Y.*, 212 U.S. 19, 40 (1909). This longstanding principle—that federal courts are obligated to hear and decide cases within their jurisdiction—is unimpeded by parallel state proceedings involving the same or similar subject matter. *Spring Comms., Inc. v. Jacobs*, 571 U.S. 69, 72 (2013). To be sure, in certain circumstances, a federal court may abstain from hearing a case if necessary to "accord[] appropriate deference to the 'respective competence of the state and federal court systems.'" *England v. La. State Bd. of Med. Examiners*, 375 U.S. 411, 415 (1964) (citation omitted). The Supreme Court has nonetheless "cautioned" federal courts to ordinarily "entertain and resolve on the merits an action within the scope of a jurisdictional grant" and not to refuse "to decide a case in deference to the States." *Sprint*, 571 U.S. at 73 (citation omitted). Moreover, the Court has made clear that abstention does not apply to cases involving "bad faith, harassment, or any other unusual circumstance that would call for equitable relief." *Younger v. Harris*, 401 U.S. 37, 54 (1971).

This case does not fall into the limited category where abstention is appropriate. While the State of West Virginia is free to tailor impeachment proceedings to promote the State's interests, any such proceedings must respect the rights granted to Justice Davis by the federal Constitution—and no abstention doctrine supports ignoring the constitutional defects she has identified. The Third Circuit thus rejected a nearly identical argument in *Larsen*. There, legislative defendants "ma[d]e the broad argument that '"Our Federalism" counsels strongly against federal courts interfering in state impeachment proceedings which are not reviewable in state courts and which would not be justiciable if they were federal proceedings.'" 152 F.3d at 247 (quoting the Appellants' Brief). The court was unpersuaded. "A federal court derives its

authority to hear a particular case or controversy from the United States Constitution and the various acts of Congress, and no provision removes cases of this kind from federal court jurisdiction." *Id.* To the contrary, federal law makes clear that federal court is *exactly* where such a case belongs: "While the Senators may deem it inappropriate to find themselves as defendants in a federal court, the overriding fact is that the Fourteenth Amendment and § 1983 were intended to radically alter the distribution of power between the federal government and the states .… To the extent that § 1983 may be seen as infringing on state sovereignty, Congress, in adopting § 1983 over a century ago, made the determination that such infringement was not only tolerable but necessary to ensure the vindication of federal rights within the states." *Id.* at 248.

Moreover, whatever may previously have been "complicated" or "unsettled" about the applicable State law, Opp. at 23, the *Workman* decision has now made clear. The impeachment proceedings violate the West Virginia Constitution, and no State interest in furthering unlawful proceedings can be sufficient grounds to deprive Justice Davis of vindication of her federal constitutional rights in this Court. Indeed, allowing these unlawful impeachment proceedings against Justice Davis to persist would mean countenancing the sort of "bad faith, harassment, or … other unusual circumstance" that *Younger* holds *cannot* support abstention. 401 U.S. at 54. Bad faith and harassment, as defined by the Court, "generally mean[] that a prosecution has been brought without reasonable expectation of obtaining a valid conviction." *Kugler v. Helfant*, 421 U.S. 117, 126 n.6 (1975) (citing *Perez v. Ledesma*, 401 U.S. 82, 85 (1971)). Here, the Defendants seek to try Justice Davis based on Articles of Impeachment that have already been held unlawful, and for a judgment that exceeds what is permitted under the legislature's own rules as well as the plain text of the West Virginia Constitution. *See* Mem. at 13-15. Her pending

trial is therefore twice removed from any "reasonable expectation of obtaining a valid conviction." *Kugler*, 421 U.S. at 126 n.6.

Even so, the Defendants have plowed forward. In so doing, their actions and accompanying statements have shown—in additional insufficient respect for due process and separation of powers principles—improper political and gender bias. *See* Mem. at 21-22. Bias is yet another exception to abstention; one predicated on the lack of an adequate state forum. The fundamental principle behind this exception is that compelling an individual to present her case to a biased tribunal offends due process, and federal courts should enjoin such proceedings. Here, where the legislature has already been held to have flouted "basic due process principles" in the impeachment proceedings to date, abstention in favor of further proceedings before the legislature would be inappropriate. *See Gibson v. Berryhill*, 411 U.S. 564, 578 (1973) (declining to abstain under *Younger* or "the principles of equity, comity, and federalism for which [*Younger*] stand[s]," where the state tribunal could not "constitutionally conduct hearings").

Moreover, in *Gerstein v. Pugh*, the Court extended the inadequate state forum exception beyond the bounds of bias by observing that federal intervention is proper when the state proceedings are unlikely to afford a remedy. 420 U.S. 103, 108 n.9 (1975). Justice Davis, who has no direct right of appeal from any potential conviction, likewise may lack a remedy if the unconstitutional Senate proceedings are permitted. And even if any Senate conviction could be reversed through later judicial action, the irreparable injury to Justice Davis's reputation and the costs of defending herself can never be remedied. Federal intervention is justified.

## II.   Justice Davis Will Suffer Irreparable Harm If the Injunction Is Not Granted.

The second factor for preliminary injunction requires Justice Davis to make a "clear showing" that she is likely to face irreparable harm absent preliminary relief. *Pashby v. Delia*, 709 F.3d 307, 320 (4th Cir. 2013). She has made her showing. Because these impeachment

proceedings violate the federal and state Constitutions according to the *Workman* opinion, this Court should enjoin the scheduled trial proceedings against Justice Davis. *See Henry v. Greenville Airport Comm'n*, 284 F.2d 631, 633 (4th Cir. 1960) ("The District Court has no discretion to deny relief by preliminary injunction to a person who clearly establishes by undisputed evidence that he is being denied a constitutional right."); *Faulkner v. Jones*, 10 F.3d 226, 233 (4th Cir. 1993) (affirming imposition of preliminary injunction based on a finding that irreparable harm caused by violation of constitutional right to equal protection was "crystal clear"). Each day that impeachment proceedings against Justice Davis continue, she faces compounding irreparable harm.

Defendants ask this Court to ignore the personal and financial costs to Justice Davis from the Senate trial because "[p]ending litigation invariably results in an emotional and mental toll." Opp. at 26. If the irreparable harm to Justice Davis were cognizable, Defendants say, then "every litigant involved in judicial proceedings … would satisfy this factor, which would then be rendered superfluous." *Id.* But nothing about these impeachment proceedings can compare to ordinary legal standards accompanying a civil or criminal trial. To the contrary, the Supreme Court of Appeals has already determined that the impeachment proceedings violate due process requirements, as well as the substantive law of West Virginia. Put differently, Defendants ask this Court to accept that there is no irreparable harm from knowingly subjecting Justice Davis to unconstitutional proceedings that violate due process requirements.

Defendants also argue that no irreparable harm will occur because "the impeachment trial actually provides Plaintiff an avenue by which to remedy her purported reputational harm." Opp. at 27. But the process being afforded to Justice Davis is inadequate to protect her interests. As the *Workman* Court has held, the impeachment proceedings have not afforded Justice Davis

17

adequate notice in multiple respects. For one, because the House Judiciary Committee never entered findings of fact, Justice Davis has inadequate notice of the factual charges against her. She also has no notice of the actual standard for her impeachable offense. Nor has she received notice of the potential penalties that could result. And contrary to what the Defendants say, the Senate procedures provide Justice Davis an inadequate opportunity to defend herself, rendering the trial superfluous. The rules do not appear to give any right to subpoena records; she has no fulsome right of discovery; she is barred from questioning Senators or the "Board of Managers"—the individuals with the best evidence of pretext; and her right to present evidence is severely curtailed. Thus, there is no merit to Defendants' assertion that Plaintiff's remedy for unconstitutional proceedings can be found in those unconstitutional proceedings.

Finally, Plaintiffs suggest that the irreparable harm to Justice Davis is "merely speculative." Opp. at 26. That is false. Justice Davis has provided but a few news articles in a vast sea of local and national press saying that she is corrupt and autocratic. *See* Mem. at 25 n.8. The shocking actions of the House in impeaching the entire remaining Supreme Court of Appeals has generated immense media attention with the narrative written entirely by the State's political branches. *See Handsome Brook Farm, LLC v. Humane Farm Animal Care, Inc.*, 700 F. App'x 251, 263 (4th Cir. 2017) (finding irreparable harm where the plaintiff's "reputation continues to be tarnished as questions about [alleged wrongdoing] continue to circulate"). Additionally, the financial and emotional costs of an illegitimate impeachment held solely so the Defendants can pursue legally unauthorized punitive and partisan attacks indisputably imposes costs that cannot be recouped. Finally, the absence of a right to appeal these illegitimate proceedings—despite the clear invalidity of any such judgment—places Justice Davis at a risk of unconstitutional liberty and property deprivations without recourse. *See Marietta Mem. Hosp. v.*

*W. Va. Health Care Auth.*, 2016 WL 7363052, at *8 (S.D.W. Va. Dec. 19, 2016) ("Where a person's constitutional right will be denied if an action is allowed to continue, an irreparable harm will be established."). All this shows that Justice Davis is likely to be irreparably harmed absent preliminary relief.

### III.    The Balance of the Hardships and the Public Interest Favor the Injunction.

Finally, Defendants argue that the balance of the hardships does not favor relief because Justice Davis should pursue her relief elsewhere—either before West Virginia Supreme Court of Appeals or before the Senate that is pursuing these unconstitutional proceedings. Opp. at 29-30. As detailed above, Justice Davis has sought relief in the Supreme Court of Appeals. *Supra*, pp. 1-2. And there is no merit to Defendants' contention that this Court should abstain in order to allow them first to pass judgment on Justice Davis's claims so that they may avoid "conduct[ing] the trial during [the Senate's] regular session" or "at a time when the Legislature is not otherwise scheduled to meet." Opp. at 30. The Senate is already sitting in special session for these proceedings; there is no additional burden from delaying the trial to another time.

In fact, the Defendants rejected the opportunity to resolve the claims Justice Davis has raised to this Court. State Senate Judiciary Chairman Charles Trump (R-Morgan) presented a motion to dismiss the four Articles of Impeachment against Justice Davis because "the goal of impeachment is to remove officials from public office," yet Justice Davis had already retired.[3] The Senate voted it down. Mem. 14. In addition, after the *Workman* Court ordered the proceedings against Justice Workman stopped due to their unconstitutionality, Defendants'

---

[3] Lacie Pierson, *WV Senate Rejects Deal, Motions to Dismiss Articles of Impeachment*, CHARLESTON GAZETTE-MAIL (Sep. 11, 2018),
https://www.wvgazettemail.com/news/politics/wv-senate-rejects-deal-motions-to-dismiss-articles-of-impeachment/article_81a8edab-ce69-5f00-b59f-1b14f761200a.html.

initially declared that they intended to *move forward* despite the Court's order.[4] Only when

Acting Chief Justice Farrell declined to flout the order were proceedings stopped.[5] Because

Justice Davis has traversed the "avenue" the Defendants say she avoided, she has no other means

to sidestep the irreparable harm that will befall her from the Defendants' constitutional contempt.

To this end, it is always in the public interest to uphold "constitutional rights" and ensure

governmental compliance with constitutional obligations, even if it is "distract[ing]" to the

Defendants. *See Centro Tepeyac v. Montgomery Cty.*, 722 F.3d 184, 191 (4th Cir. 2013) (en

banc) (citation omitted). Defendants' attempt to sweep all popularly elected Justices from office

and to replace them with a "conservative court," Mem. at 3, deprives all citizens of West

Virginia of their constitutionally guaranteed right to elect the judicial officers serving on the

State's highest court. The Court should grant preliminary injunctive relief to preserve the rule of

law until a final determination of the important constitutional claims raised in this litigation.

## CONCLUSION

For the foregoing reasons, Plaintiff Davis respectfully requests that the Court grant a

preliminary injunction barring any impeachment trial proceedings against her in the West

Virginia Senate.

---

[4] *See, e.g.*, Steve Allen Adams, *Workman to Stand Trial on Impeachment Monday Despite Constitutional Issues*, THE PARKERSBURG NEWS & SENTINEL (Oct. 15, 2018), online at http://www.newsandsentinel.com/news/local-news/2018/10/workman-to-stand-trial-on-impeachment-monday-despite-constitutional-issues/.

[5] Meagan Flynn, *West Virginia Botches Impeachment of Chief Justice. Faces Constitutional Crisis. Stay Tuned*, WASH. POST (Oct. 15, 2018), online at https://www.washingtonpost.com/news/morning-mix/wp/2018/10/15/west-virginia-botches-impeachment-of-chief-justice-faces-constitutional-crisis-stay-tuned/?utm_term=.a1b18b0d3d73.

DATED: October 15, 2018

Respectfully submitted,

/s/ Lonnie C. Simmons

s/ James M. Cole

Lonnie C. Simmons (W. Va. I.D. No. 3406)
J. Timothy DiPiero (W. Va. I.D. No. 1021)
DITRAPANO BARRETT DIPIERO MCGINLEY &
SIMMONS, PLLC
P.O. Box 1631
Charleston, WV 25326
(304) 342-0133
tim.dipiero@dbdlawfirm.com
lonnie.simmons@dbdlawfirm.com

James M. Cole*
SIDLEY AUSTIN LLP
1501 K Street, N.W. #600
Washington, D.C. 20005
(202) 736-8000
jcole@sidley.com
* *Pro hac vice* application approved

Tacy F. Flint**
Heather Benzmiller Sultanian**
John K. Adams**
One South Dearborn
Chicago, Illinois 60603
(312) 853-7000
tflint@sidley.com
hsultanian@sidley.com
john.adams@sidley.com
**Admitted *Pro hac vice*

*Counsel for Plaintiff*

21

## CERTIFICATE OF SERVICE

I hereby certify that on October 15, 2018, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

/s/ Lonnie C. Simmons
Lonnie C. Simmons (W.Va. I.D. No. 3406)